**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYLEAF TEAGLE** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 24-CV-5544** |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** | : | |
| *et al.* | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                    MARCH 17, 2025

Plaintiff Kyleaf Teagle, proceeding *pro se*, an incarcerated individual currently housed at SCI Phoenix, asserts claims against numerous prison officials based on his prolonged administrative custody status, his psychiatric care, and the conditions of his confinement. As set forth more fully below, the Court will dismiss Teagle's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(A)(b)(1). However, the Court will permit Teagle to file an amended complaint limited to those claims dismissed without prejudice.

## I.    FACTUAL ALLEGATIONS[1]

Teagle asserts claims pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("RA"), against sixty-two (62) Defendants. (Compl. at 12-14.) Teagle names the following Defendants: (1) SCI Phoenix; (2) Superintendent Joe Terra; (3) Members of the PRC; (4) J. Muick; (5) N. Wynder; (6) C.

---

[1]    Teagle used the form complaint available to unrepresented litigants to file his claims and added numerous handwritten pages. (ECF No. 2.) The Court considers the entire submission to constitute the Complaint, to which the Court adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Teagle's Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up.

Hensley; (7) S. Grady; (8) "Psychology Drummed"; (9) "Psychology Ruiz"; (10) Doctor Burritt; (11) Doctor Glushakow; (12) CO Ski; (13) CO Pixel; (14) CO Hue; (15) CO Trotman; (16) CO Car; (17) CO Simmions; (18) CO Clausen; (19) CO Parker; (20) CO Tidwell; (21) CO Barksdale; (22) CO Rick; (23) CO Shorter; (24) CO M. Matus; (25) Lt. J. Nyce; (26) Lt. Pantoja; (27) CO Holden; (28) Lt. Judge; (29) CO Benson; (30) G. Orlando; (31) CO Gordeen; (32) "Psychology Stickney; (33) Lt. Patterson; (34) SCI Frackville; (35) Superintendent K. Brittain; (36) "Members of PRC"; (37) S. Kephart; (38) P. Damiter; (39) R. Styka; (40) N. Wynder; (41) Lt. J. Provow; (42) "UM R. Tomcavage"; (43) M. Gourley; (44) "Other DOC Employees Involved"; (45) CO Warford; (46) CO Brennan; (47) CO Storm; (48) CO Walton; (49) Sgt. Walter; (50) CO Morris; (51) CO Mall; (52) CO Whitney; (53) CO Na'dah; (54) Lt. Simpson; (55) "Psychology Ms. Smith"; (56) Counselor Merinick; (57) Lt. Pinkey; (58) the Secretary's Office of Inmate Grievances and Appeals; (59) D. Varner; (60) "The Ones Who Approve and Send out emails for RRL Placement"; (61) SCI Fayette; and (62) the Department of Corrections ("DOC"). (*Id*. at 12-13.)

Teagle's factual assertions encompass 54 handwritten pages and detail events occurring over approximately four and a half years at three state prisons. His stream-of-consciousness style of writing, which is at times repetitive and scattered, obscures the true nature of his claims. Teagle frequently fails to link Defendants to his allegations or specify the timing of events. Despite the confusing nature by which he presented his claims, the Court understands Teagle to allege generally that his prolonged administrative custody status on a Restricted Release List ("RRL"), and the conditions under which he is housed in a restricted housing unit ("RHU"), including being forced to take medications he believes he does not need, violates his constitutional rights.[2] (Compl.

---

[2]    The United States Court of Appeals for the Third Circuit (the "Third Circuit") has explained Pennsylvania's RRL classification process as follows:

at 23.)

The allegations in the Complaint begin with Teagle's custody at SCI Fayette sometime in 2020. (*Id.* at 17.) Teagle asserts that he was placed on the RRL and transferred to the RHU at the request of members of his Program Review Committee ("PRC"). (*Id.*) During his time at SCI Fayette, corrections officers allegedly lost Teagle's legal mail and "trashed" his cell. (*Id.* at 15.) Teagle states that he filed grievances at SCI Fayette but was transferred to SCI Frackville before he "could complete" them. (*Id.* at 8.) Teagle does not identify any particular staff member at SCI Fayette as a Defendant; rather, he names the prison and all "employers of PRC Members who endorsed [him] for RRL placement." At some point that is not disclosed in the Complaint, Teagle was transferred to SCI Frackville. (*Id.* at 15.)

Teagle asserts that upon his arrival at SCI Frackville, he was confined in the RHU and placed on the RRL. (*Id.* at 17.) He states that he received a written reprimand in July of 2021, was placed in a psychiatric observation cell ("POC"), and commenced a hunger strike in August of 2021. (*Id.* at 15, 17.) During his hunger strike, he was allegedly "sprayed in the mouth" with an unidentified liquid and "almost died." (*Id.*) During his time at SCI Frackville, Teagle submitted grievances about Defendants Lt. Provow, CO Brennan, CO Storm, CO Walton, and CO Warford. (*Id.* at 17, 18.) Teagle does not disclose the content of those grievances except to state that the grievance against Storm and Walton allegedly involved them "trashing [his] cell." (*Id.* at 17.)

---

The RRL is a list of inmates who may only be released from [administrative custody "AC"] status upon prior approval of the Secretary. An inmate may be placed on RRL when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern. The Secretary must approve the designation of the inmate to the RRL.

*Nifas v. Beard*, 374 F. App'x 241, 243 (3d Cir. 2010) (*per curiam*) (internal quotations omitted).

Prison documents attached as exhibits to the Complaint reflect that Teagle was transferred to SCI Phoenix on December 21, 2021. (*Id*. at 56.) The majority of the allegations in Teagle's Complaint pertain to incidents that transpired during his incarceration at SCI Phoenix. Teagle alleges generally that at SCI Phoenix he was "forcefully taken to [a] POC and forcefully injected with unknown drugs," remained on the RRL even though he didn't "meet the criteria," and was subject to unconstitutional conditions of confinement. (*Id*. at 5, 47.) Specifically, Teagle alleges that in July or August of 2022, he was "forcefully" taken to a POC by Defendant Lt. Pantoja and other officers "shown on camera."[3] (*Id*. at 16, 18.) Officer Matus and Officer Gordeen were allegedly present when Teagle was injected with needles. (*Id*. at 19.) Teagle states that he was again forcefully taken to a POC by Lt. Judge on April 3, 2024, based on false claims by Defendant Drummed that Teagle was hearing voices and hallucinating. (*Id*. at 4, 21-22.) Teagle alleges that Dr. Glushakow and Dr. Burritt refused to stop prescribing him medications he deemed unnecessary. (*Id*. at 21.) According to Teagle, he informed Dr. Burritt that he did not want to take his prescriptions, but on June 24, 2024, and September 9, 2024, Dr. Burritt renewed them. (*Id*. at 29.) Teagle attaches to his Complaint PRC review paperwork, which reveals that psychiatric medication had been prescribed to him in June and September of 2024. (*Id*. at 68-71.) He alleges that the doctors at SCI Phoenix were "involved in things" to make it look like he needed

---

[3]     Repeatedly through the Complaint, Teagle refers to events that "can be seen on camera." Currently, no camera footage is part of the record in this case. Teagle cannot satisfy his burden to state a plausible claim where he fails to allege specific facts but instead directs the Court to look at camera footage that is not available. Even if he had been able to include camera footage with his Complaint, merely attaching an exhibit without describing the underlying events in narrative form in the body of the Complaint is not sufficient to allege a plausible claim. *See Berkery v. Credit Collection Servs*., No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."); *RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. 13-77, 2013 WL 1338309, at *2 (D.N.J. Apr. 1, 2013) ("Plaintiff cannot meet its pleading requirements under Rule 8(a) by attaching numerous exhibits to its Complaint.").

medications and fit the criteria for the RRL.  (*Id*. at 21, 27-28.)  Teagle alleges that many Defendants urged him to take medications, including Defendant Hensley during PRC meetings and Defendants Judge and Hue during their visits to Teagle's cell.  (*Id*. at 31-33.)  He also states that the medications caused him to shake.  (*Id*. at 5.)

While the timeframes are not explicitly stated, Teagle spent periods of his time in administrative custody at SCI Phoenix.  In 2024, Teagle challenged his AC status, contending that his prolonged placement violated his due process rights and expressed a desire to be placed in the general population.  (*Id*. at 54.)  In a letter dated May 22, 2024, about Teagle's PRC Hearing Appeal, he was informed that his placement on the RRL was a consequence of his "poor institutional behavior and actions" and that he must participate in recommended programming and PRC reviews but will remain in AC status.  (*Id*.)

Teagle also complains about certain conditions of his confinement at SCI Phoenix.  He alleges that officers entered his cell and confiscated his legal mail without his permission.  (*Id*. at 7, 16, 20.)  He also states that officers contaminated his food with drugs, K2, and other "stuff," which caused him to contract "transmitted diseases."[4]  (*Id*. at 5, 16, 20, 28.)  He asserts that occasionally during meals or family visits, officers would turn the lights off in his cell.  (*Id*. at 47.)  Teagle also alleges that he received foam trays for meals in the POC area because K2 was found in his system, but he states that prison officials put the K2 in his medications and in his food as retaliation for his misconducts.  (*Id*. at 16, 25, 28.)  According to the exhibits attached to the Complaint, Teagle has received three misconducts at SCI Phoenix.  (*Id*. at 68.)  Based on these

---

[4]       Teagle does not allege the specific involvement of any SCI Phoenix staff member.  He only asserts that food contamination and legal mail confiscation generally occurred during the 6:00 to 2:00 and 2:00 to 10:00 shifts and states that the following Defendants worked during those shifts:  CO Trotman, CO Clausen, CO Car, CO Ski, C Pixel, CO Parker, CO Tidwell, CO Barksdale, CO Rick, CO Shorter, and CO Mattus.  (*Id*. at 20)

allegations, Teagle requests money damages, to be removed from the "mental health roster," that the officers at SCI Phoenix be ordered to wear body cameras, and that he be permitted to visit the hospital to be "check[ed] for transmitted diseases." (*Id*. at 23-24.)

## II.    STANDARD OF REVIEW

Although Teagle has paid the filing fee in full, (*see* ECF No. 4), the Court has the authority to screen the Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id*. § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id*. § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (*per curiam*); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter*

*v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Teagle is proceeding *pro se*, the Court construes the allegations in the Complaint liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'"  *Id.* (quoting *Mala*, 704 F.3d at 245).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.*  In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).  Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims."  *Garrett*, 938 F.3d at 93 (citation omitted).  "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8."  *Id*. (internal quotations omitted).  The important consideration for the Court is whether, "a *pro se* complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits."  *Id*. at 94.

## III.    DISCUSSION

Teagle asserts constitutional claims under Section 1983 as well as statutory claims under the ADA and the RA.

### A.       Constitutional Claims under § 1983

As best as the Court can discern, Teagle asserts First, Eighth, and Fourteenth Amendment claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.   "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.       Official Capacity Claims and Claims against the DOC, SCI Phoenix, SCI Fayette, SCI Frackville, and the Secretary's Office of Inmate Grievances and Appeals

Teagle seeks money damages for his claims and checked the box on the form Complaint indicating that he presents claims against Defendants in their official capacities as well as their individual capacities.  (*See* Compl. at 2, 3.)  Official capacity claims are indistinguishable from claims against the entity that employs the officials.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Teagle also names as Defendants the DOC, SCI Phoenix, SCI Fayette, SCI Frackville, and the Secretary's Office of Inmate Grievances and Appeals.  The Eleventh Amendment bars suits against a state and its agencies, including the DOC, that seek monetary damages.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Thus, suits against state officials acting in their official capacities are really suits against the employing government agency and, as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Moreover, the DOC, including its correctional institutions, is not considered a "person" for purposes of § 1983.  *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the

8

Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."). Accordingly, all claims for money damages against the DOC, SCI Phoenix, SCI Fayette, SCI Frackville, and the Secretary's Office of Inmate Grievances and Appeals, and all official capacity claims seeking money damages will be dismissed with prejudice.

### 2.    Lack of Personal Involvement

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Teagle names numerous Defendants associated with the three State Correctional Institutions but asserts no factual allegations in the body of his Complaint about how each of these

individuals was personally involved in the events he described.[5]  Teagle names other Defendants because they generally worked the shift during which events would take place or because Teagle "let them know what was going on."[6]  Certain other Defendants were named simply because Teagle submitted a grievance about them, without alleging what any of these Defendants did or did not do that caused him to file the grievance.[7]  Teagle also appears to name groups of Defendants without specifically providing names or stating how each member of the group was involved in the events giving rise to his claims.  For example, Teagle names as Defendants "Members of the PRC" at SCI Phoenix and at SCI Frackville, "Other DOC employees involved" at SCI Frackville, "[t]he Ones Who Approve and Send Out Emails for RRL Placement," and "employers of PRC Members who recommended [him] for RRL placement."[8]  (*Id*. at 12-13.)  Any claims asserted

---

[5]    These Defendants are CO Simmions, CO Holden, CO Benson, CO Orlando, Superintendent K Brittain, S. Kephart, P. Damiter, R. Styka, N. Wynder, Um. R. Tomcavage, M. Gourley, Sgt. Walter, CO Morris, CO Mall, CO Whitney, CO NA'dah, Lt. Simpson, "Psychology Ms. Smith," Counselor Merinick, "Psychology Stickney," and D. Varner.

[6]    Teagle alleges that Defendants CO Trotman, CO Clausen, CO Car, CO Ski, CO Pixel, CO Parker, CO Tidwel, CO Barksdale, CO Rick, and CO Shorter worked the 6:00 to 2:00 shift or the 2:00 to 10:00 shift.  (Compl. at 20.)  He further alleges that he let other Defendants at SCI Phoenix "know what was going on," including J. Muick, N. Wynder, C. Hensley, S. Grady, and Lt. J. Nyce.  (*Id*. at 21.)

[7]    For example, Teagle alleges that he submitted grievances about Lt. J. Provow, CO Warford, CO Brennan, CO Storm, and CO Walton.  (Compl. at 17.)

[8]    Many of the events Teagle describes as taking place at SCI Fayette and SCI Frackville occurred prior to August 2021.  The Court will not consider the timeliness of these claims at this time.  Generally, Teagle's claims are subject to a two-year statute of limitations.  *See* 42 Pa. Const. Ann. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  However, pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners seeking to challenge the conditions of their confinement, like Teagle is here, must exhaust all available administrative remedies before bringing a lawsuit.  42 U.S.C. § 1997e(a).  "The [Pennsylvania Department of Corrections] has a grievance policy involving a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA."  *Jackson v. Carter*, 813 F. App'x 820, 823 (3d Cir. 2020) (*per curiam*).  Briefly, an inmate must file an initial written grievance, appeal to the facility manager, and file a final written appeal to the Secretary's Office of Inmate Grievances and Appeal.  *Id*.; *see also Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 151 (3d Cir. 2016) (describing DOC grievance process in more detail).  "[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies."  *Pearson v. Sec'y Dep't of Corr*., 775 F.3d 598, 603 (3d Cir. 2015).  It is not clear when Teagle began to file grievances and if so, when they were resolved.

against these collectively named Defendants must also be dismissed. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff).

In addition, to the extent that Superintendent Terra and Superintendent Brittain are named simply due to their high-ranking positions at SCI Phoenix and SCI Frackville, respectively, this is not sufficient to state a plausible claim. Although Teagle names Terra and Brittain as Defendants, the Complaint contains no specific allegations against them. Supervisors are not liable for alleged constitutional violations committed by their subordinates simply because they employ them. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (holding that liability under § 1983 cannot be predicated on a *respondeat superior* basis); *Jutrowski*, 904 F.3d at 290 ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."[9] *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). Moreover, to the extent that these Defendants are named because they were involved in denying Teagle's grievances, such claims are not viable because participation in the grievance process does not, without more, establish involvement in

---

[9]    There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). Second, a supervisor may "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. Teagle's Complaint does not include allegations that would plausibly support a supervisory liability claim against either Brittain or Terra.

the underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue].").

Based on the absence of allegations in the Complaint about how each of these Defendants was personally involved in the alleged wrongs, Teagle fails to put the Defendants on notice of the conduct with which they are charged so that they can reasonably respond. He therefore fails to state plausible § 1983 claims against these Defendants.

### 3.    Due Process Claims based on RRL Placement

The Court understands Teagle to assert Fourteenth Amendment due process claims based on his administrative confinement status on the RRL and his continued placement in an RHU despite his belief that he "does not fit the criteria." (Compl. at 4.) It is well-settled that prisoners have no inherent constitutional right to any particular security classification or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) ("We have held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). Rather, in the prison context, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486). In deciding whether conditions are atypical and significant for purposes

of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017).

Teagle alleges that he was designated to the RRL at SCI Fayette and that the designation carried over when he was transferred to SCI Frackville and later to SCI Phoenix. It is not clear from the Complaint whether Teagle has been in administrative custody during all events described in his Complaint or whether there were breaks in his status. Nor is it clear the reason why he was designated for placement on the RRL. While placement in administrative confinement, including designation to the RRL, does not by itself trigger a liberty interest, "an unduly lengthy period in administrative confinement may amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hill v. Fisher*, No. 10-459, 2010 WL 6004059, at *5 (M.D. Pa. Nov. 17, 2010), *report and recommendation adopted*, 2011 WL 846201 (M.D. Pa. Mar. 8, 2011); *see Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 67 n.6 (3d Cir. 2013) (*per curiam*) ("To the extent that Huertas' due process claim is based on his placement on the RRL, a list of inmates who may only be released from administrative custody upon prior approval of the Secretary of Corrections, we agree with the District Court that this does not implicate a constitutionally protected due process right.").

Assuming that the circumstances of Teagle's incarceration implicate a liberty interest, the allegations do not support a plausible inference that Teagle was denied proper due process protections. The Third Circuit has held that "an 'informal, nonadversary review' at which the prisoner has the opportunity to state his views satisfies the requirements of due process." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (holding that a prisoner who was placed in administrative

confinement for eight years was afforded due process because he was afforded periodic PRC meetings where he had an opportunity to voice concerns and be advised of the prison's reasons for denying his release); *Huertas*, 533 F. App'x at 67 (concluding that inmate in administrative confinement on the RRL for over seven years did not have procedural due process rights violated where his status was reviewed every 90 days in accordance with DOC policy). Teagle alleges in his Complaint that he met at various times with members of the PRC. He also attaches PRC reports to his Complaint, which reveal that concerns he raised during those meetings were addressed by members of his PRC team and that changes to his program were made based on his concerns.

Courts in this Circuit have generally found that so long as prison officials follow the periodic review procedures mandated by DC-ADM 802, this satisfies the requirements of due process.[10] *See Shoats*, 213 F.3d at 145-46; *see also Bowen v. Ryan*, 248 F. App'x 302, 304-05 (3d Cir. 2007) ("Bowen was afforded an initial opportunity to be heard upon confinement, and periodic review of his status. Like the District Court, we reject [his] conclusory allegations that the periodic reviews by the PRC were rote or meaningless."); *Delker v. McCullough*, 103 F. App'x 694, 695 (3d Cir. 2004) ("We agree with the District Court that the appellees gave Delker meaningful periodic reviews, and thus procedural due process, and were entitled to summary judgment."). It is not clear based on the Complaint whether Teagle has received reviews of his administrative confinement status every 90 days, as required by DC ADM 802. *See* DC-ADM 802(2)(D)(5); *see also Watson v. Wetzel*, No. 23-3246, 2024 WL 5096209, at *10 (E.D. Pa. Dec. 12, 2024) (noting that "Defendants complied with [DC-ADM 802] by giving Watson notice of his initial RRL approval, reviewing his RRL status every 90 days, and assessing Watson's RRL status annually.").

---

[10]     DC ADM 802 is the "Administrative Custody Procedures Policy" for the Pennsylvania Department of Corrections. *See* https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/802-administrative-custody-procedures.pdf (last viewed Mar. 5, 2025.)

In addition, Teagle has not alleged any specific deficiencies in the PRC review framework set out by DC-ADM 802, or that he was otherwise denied due process. Although Teagle disagrees with the PRC's determination that he remains on the RRL, this alone does not support a due process claim. *See Huertas*, 533 F. App'x 64, 67 ("Huertas may disagree with prison officials' evaluation that ongoing administrative custody is justified by continuing security concerns, but he must show that the periodic reviews he receives are constitutionally inadequate, and he has not done so."). Accordingly, Teagle has failed to state a plausible due process claim based on his prolonged RRL placement.

### 4. Forced Medication Claims

Teagle also asserts constitutional claims based on allegations that, at SCI Phoenix, he was forcefully injected with medications and that doctors continued to prescribe him medications that he refused. "[C]onvicted prisoners[] . . . retain a limited right to refuse treatment," although this right must also be balanced against valid state interests. *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990); *see also Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (holding that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment" that must be balanced against the state's legitimate interests). However, "a prison may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives." *White*, 897 F.2d at 113 (3d Cir. 1990); *see also Aruanno v. Glazman*, 316 F. App'x 194, 195 (3d Cir. 2009) ("[T]he decision of a medical professional to force medicate a prisoner is presumed valid, 'unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.'" (quoting *White*, 897 F.2d at 113)). The

Court of Appeals for the Third Circuit has also construed forced medication claims brought by prisoners under the Eighth Amendment. *See Aruanno*, 316 F. App'x at 195 (analyzing forced medication claim under Eighth Amendment and Due Process Clause).

Teagle alleges that while in the POC at SCI Phoenix, unidentified officers "bust[ed] in [his] cell and injected [him] with needles . . . more than once forcefully." (Compl. at 16.) Elsewhere in his Complaint he alleges that in July or August of 2022, he was "forcefully" taken to a POC by Lt. Pantoja and other officers and was "injected with a needle forcefully" by someone he does not identify (*Id*. at 18.) CO Matus and CO Gordeen were allegedly present when Teagle was injected, but their role in the incident is not otherwise alleged. (*Id*. at 19.) The Court understands Teagle to assert excessive force and due process claims based on these allegations. As pled, however, Teagle fails to state a plausible claim. Other than his conclusory assertion that Lt. Pantoja took him a POC forcefully, Teagle does not provide sufficient details concerning the circumstances that led to the alleged forceful injections, including how force was used, the reason for the injections, and whether he was harmed in any way.[11] Teagle also fails to allege specifically how any other named Defendant was involved. Without details concerning these incidents, Teagle fails to put Defendants on notice of the conduct with which they are charged.

Teagle also alleges that certain medical staff at SCI Phoenix, including Dr. Drummed, Dr. Burritt, and Dr. Glushakow, prescribed medication to him that he believed he did not need, and that despite his requests, they refused to stop prescribing it. Teagle does not elaborate on what medication he refused or the reason the medication was prescribed to him in the first place. He also does not allege whether he was forced to take the medication. *See Carter v. Munoz*, No. 18-994, 2020 WL 838265, at *2 (D. Del. Feb. 20, 2020) (dismissing forced medication claim because,

---

[11] According to Teagle's Individual Recovery Plan, which he attaches to his Complaint, he was prescribed by pills and shots while housed at SCI Phoenix. (*See* Compl. at 66.)

*inter alia*, "it is not clear if Plaintiff is actually forced to take medication or if he takes it but does not want to").  Teagle's claims for forced medication, whether asserted under the Eighth or the Fourteenth Amendment, are undeveloped as pled and must be dismissed without prejudice to Teagle being provided an opportunity to amend his claims.

### 5.    Excessive Force Claims

The Court understands Teagle to assert Eighth Amendment excessive force claims based on allegations that in August 2021, he was "sprayed" by officers at SCI Frackville, including Lt. Pinkey, while he was on a hunger strike.  The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment."  *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline."  *Jackson v. Bueno*, No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7).  The factors used to determine whether the force applied was excessive include:  (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.  *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321).

Teagle alleges that he was sprayed in the mouth with an unknown liquid sometime in August of 2021 while on a hunger strike, and that after he was sprayed, officers placed him in a wheelchair and put a "spit mask" on his face. (Compl. at 15.) Teagle does not provide any details about the circumstances leading up to him getting sprayed, who was involved, and whether he was harmed. Nor does Teagle allege sufficient facts about how Lt. Pinkey was specifically involved. The claim must be dismissed because Teagle fails to provide any factual context to allow the Court to consider whether the spraying was intended to harm or excessive. *See Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) ("The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984))); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (*per curiam*) (explaining that the use of chemical agents is not a *per se* constitutional violation).

### 6.    Eighth Amendment Conditions of Confinement Claims

Teagle also asserts claims based on allegations that prison officials entered and exited his cell without his permission, tampered with the lights during family visits or meals, and tainted his food. The Court understands these challenges to raise Eighth Amendment claims in connection with the conditions of his confinement while in DOC custody. To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty.*

*Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  A prisoner must also establish that the defendants acted with deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Teagle repeatedly alleges throughout his Complaint that while he was housed at all three DOC facilities, prison officials entered his cell without permission, sometimes to conduct searches and other times to "trash" his cell.  (Am. Compl. at 7, 15, 16, 17, 41.)  He also alleges that officers would "play with" the lights by turning them on and off, either during family visitation or during meals.  (*Id*. at 39, 47.)  Teagle fails to state plausible claims based on these conditions.[12]  First, Teagle's complaint that officials entered his cell with his permission fails to allege a plausible claim because "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."  *Palmer*, 468 U.S. at 530.  Second, Teagle fails to provide sufficient details about the incidents, including when they occurred and who was involved.  *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.").  Third, Teagle has not alleged how he was harmed by these incidents.  *See Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (concluding that denial of showers for fifteen days did not violate the Eighth Amendment when the inmate did not "suffer[ ] any harm as a result of the denial of additional showers"); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (concluding that whether the

---

[12]    To the extent Teagle bases his claims on allegations that officers confiscated items from his cell or otherwise destroyed his personal property, the claim must also be dismissed.  A prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property because he has adequate postdeprivation remedies available to him.  *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *see also Tillman*, 221 F.3d at 422 (holding that the prison grievance system provides adequate postdeprivation remedy to satisfy due process).

plaintiff suffered harm was critical to the determination of whether unsanitary conditions were unconstitutional).

Teagle also repeatedly alleges that while he was housed at SCI Phoenix, prison officials put "stuff" in his food, which "intoxicated him" and caused him to suspect that he may have contracted a "transmitted disease." (Compl. at 5, 8, 25, 34, 37.) The Eighth Amendment protection requires that prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger" to their health and well-being. *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramons v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *Mora v. Camden Cnty.*, No. 09-4183, 2010 WL 2560680, at *8 (D.N.J. June 21, 2010)). It has been held that "prison officials may violate the Eighth Amendment by serving unsanitary, spoiled or contaminated food if the prisoner also alleges that he or she suffered a distinct and palpable injury." *See DeJesus v. Carey*, No. 15-2504, 2016 WL 6134540, at *3 (M.D. Pa. Oct. 20, 2016) (citing *Robles*, 725 F.2d at 15); *Escobar v. Mora*, 496 F. App'x 806 (10th Cir. 2012) (inmate stated a claim when he alleged that he lost thirty pounds and suffered psychological and mental injury because an officer spit in food). However, food tampering has also been found not to state a claim where no physical injury has been alleged. *See Rieco v. Moran*, 633 F. App'x 76, 78 (3d Cir. 2015) (inmate did not state an Eighth Amendment food tampering claim where no injury was alleged).

Teagle's allegations about contaminated food are not sufficient to support a plausible claim. Although Teagle alleges generally that he was served food with "stuff" in it and that he believes he developed stomach injuries as a result of the contaminated food, he does not provide any details about who provided him the tainted food, when it was provided, and when he made sick calls after ingesting the food. Instead, Teagle alleges that food was generally "intoxicated"

during two work shifts and that 11 correctional officers were assigned to work those shifts.  This is too vague and attenuated to support a plausible inference that any specific Defendant acted with deliberate indifference to Teagle's health or safety.  Although Teagle alleges some details about one incident involving CO Clausen providing him tainted food on September 19, 2024 (*see* Compl. at 20, 74), he does not allege how he was harmed by the incident.  *See Rieco*, 633 F. App'x at 78 (noting that prisoners must claim they suffered "a distinct and palpable injury" to state an Eighth Amendment claim in connection with contaminated food (quoting *Robles*, 725 F.2d at 15)).  Accordingly, any claim Teagle asserts in connection with alleged unconstitutional conditions of his confinement will be dismissed.

### 7.  Missing Legal Mail Claims

Teagle also appears to assert First Amendment claims related to prison officials' alleged interference with his legal mail.  Prisoners have protected First Amendment interests in both sending and receiving mail.  *See Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Turner v. Safley*, 482 U.S. 78, (1987).  However, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration."  *Thornburgh*, 490 U.S. at 407 (quoting *Turner*, 482 U.S. at 85).  To state a plausible interference with legal mail claim, a plaintiff must allege that the interference was done according to a "pattern and practice."  *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech.").  "[A] single instance is usually not enough."  *Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir. 2020) (*per curiam*).  Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails.  *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006).  Nonetheless, courts have found that mere isolated incidents of interference

without evidence of an improper motive, are insufficient to establish a First Amendment violation. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (*per curiam*) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation.").

Teagle generally alleges that during his stay at SCI Fayette and SCI Phoenix, officers "lost" his legal mail. Teagle's Complaint fails to set forth specific factual averments describing how any named Defendant was personally involved in the interference. Teagle also makes no allegation that the interference was part of a pattern and practice. Moreover, although Teagle names each Defendant that allegedly worked during the shifts when he believes his legal mail went missing, the mere fact that they may have worked at that time is too attenuated a connection to assert a plausible claim against any of them. Without any actual specificity, the Court must conclude that Teagle has failed to state a plausible claim of interference with legal mail under the First Amendment. *See Taylor*, 196 F. App'x at 128 (stating that the inmate must allege the "personal involvement on the part of the Defendants in the alleged pattern and practice of opening his mail"). Accordingly, Teagle's First Amendment interference with legal mail claim will be dismissed.

**B.    ADA and RA Claims**

Teagle asserts claims under Title II of the ADA and the RA. The Court will consider these claims together because "the substantive standards for determining liability are the same." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019). "To state a claim under either the ADA or the RA, [a plaintiff] must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Id.* at 288-89 (footnote omitted). A plaintiff "must also show intentional discrimination under a deliberate indifference standard [if] he seeks

compensatory damages." *Id.* at 289.  This standard may be satisfied with allegations that the defendant failed to act despite knowledge that a federally protected right was substantially likely to be violated. *Id.* at 292.

A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ."  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12102(2)(A).  "Both [Title II of] the ADA and the RA require public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess*, 933 F.3d at 287; *see also Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" in Title II of the ADA includes recreational, medical, educational, and vocational prison programs).  But neither Title II of the ADA nor the RA provides for individual liability. *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *A.W. v. Jersey City Pub. Sch*., 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to [the RA] against recipients of federal financial assistance, but not against individuals").  Accordingly, the Court understands Teagle's ADA and RA claims to be

asserted only against the DOC.  To the extent that he asserts ADA or Section 504 claims against any of the individually named Defendants, those claims will be dismissed.

The nature of Teagle's ADA and RA claims are not clear from his Complaint.  He alleges no factual allegations to support a reasonable inference that he suffered from a disability or that he was precluded from participating in a program, service, or activity because of that disability.[13] These failures are fatal to his claims.  *See, e.g.*, *Berk v. New Jersey Dep't of Hum. Servs.*, No. 23-1853, 2024 WL 3639442, at *6 (D.N.J. Aug. 2, 2024) (granting motion to dismiss where the plaintiff failed to allege "any specificity as to the nature or time-period of [his] alleged disability"). Nor does Teagle assert any facts to support a reasonable inference that any Defendant intentionally discriminated against him on the basis of a disability.  *See Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018).  To the extent that Teagle bases his ADA or RA claims on any alleged denial or inadequacy of medical treatment, "decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA."  *Nunez v. Prime Care Health, Inc.*, No. 19-0859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (citing cases); *see also Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.").  Accordingly, Teagle has failed to assert plausible ADA and RA claims.

---

[13]    Although exhibits attached to the Complaint suggest that prison officials believed Teagle suffered from psychological conditions, Teagle does not discuss the conditions in his Complaint and appears to dispute the characterization and diagnosis, claiming repeatedly that he did not need medications.

## IV.    CONCLUSION

For the reasons set forth, the Court will dismiss Teagle's Complaint pursuant to 28 U.S.C. § 1915(A)(b)(1).    The following claims will be dismissed with prejudice:    all § 1983 official capacity claims; all § 1983 individual capacity claims asserted against the DOC, SCI Phoenix, SCI Fayette, SCI Frackville, and the Secretary's Office of Inmate Grievances and Appeals; and the ADA and RA claims asserted against all Defendants with the exception of the DOC.    The balance of the claims is dismissed without prejudice.    Teagle may file an Amended Complaint in the event he can allege facts to address the defects noted by the Court as to his claims dismissed without prejudice.    The Court will also deny without prejudice as premature Teagle's request for the appointment of counsel (Compl. at 8).[14]

An appropriate Order follows.


*NITZA I. QUIÑONES ALEJANDRO, J.*

---

[14]    Teagle's request for the appointment of counsel is premature at this stage of the litigation because his case has not yet passed the screening stage under 28 U.S.C. § 1915.    *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim").    The Court will therefore deny Teagle's request without prejudice.    Teagle may renew his request after such time as his amended complaint, if he files one, has been screened for merit.    If Teagle chooses to file a renewed motion, he should do so in accordance with the factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*.